IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SUSAN LAGERMAN, *Plaintiff/Appellant*,

*v.*

ARIZONA STATE RETIREMENT SYSTEM, *Defendant/Appellee*.

No. 1 CA-CV 18-0014
FILED 3-7-2019

Appeal from the Superior Court in Maricopa County
No. LC2017-000102-001
The Honorable Patricia A. Starr, Judge

**AFFIRMED**

COUNSEL

Robaina & Kresin PLLC, Phoenix
By Thomas T. Griffin
*Counsel for Plaintiff/Appellant*

Arizona State Retirement System, Phoenix
By Jothi Beljan
*Counsel for Defendant/Appellee*

**OPINION**

Judge Randall M. Howe delivered the opinion of the Court, in which
Presiding Judge Diane M. Johnsen and Judge Maria Elena Cruz joined.

**H O W E**, Judge:

**¶1** Susan Lagerman appeals the superior court's order affirming a decision by the Arizona State Retirement System ("ASRS") that she (1) could not elect to begin receiving retroactive retirement benefits payable before the date she submitted her retirement application and (2) did not warrant a retroactive retirement date. She also argues that ASRS violated its fiduciary duty in denying her request for a retroactive retirement date. She further argues that ASRS breached statutory and constitutional provisions protecting her retirement benefits against forfeiture, diminution, or impairment.

**¶2** We affirm. The plain language of A.R.S. § 38–764(A) prohibits an ASRS member from electing a retirement date before the date that ASRS receives the member's retirement application. Also, Lagerman's request for a retroactive retirement date was properly denied because she was unable to show that she could not have submitted a retirement application before the retroactive date that she had sought. Further, ASRS did not violate its fiduciary duty to Lagerman, and it did not cause her to forfeit her benefits or cause her benefits to diminish or become impaired.

## FACTS AND PROCEDURAL HISTORY

**¶3** In 1978, Lagerman became an ASRS member when she was hired as a securities examiner with the Arizona Corporation Commission, and her membership continued when she later worked as an attorney with the Arizona Attorney General's Office ("AGO") from 1981 to February 2003. An active member is a state employee who works at least 20 weeks in each fiscal year, works at least 20 hours each week, and makes member contributions to ASRS. A.R.S. § 38–711(1). As an ASRS member, Lagerman received annual member statements. After Lagerman left the AGO in February 2003, ASRS mailed her an annual member statement for the time period of July 1, 2003 through June 30, 2004. The member statement included Lagerman's early retirement date (the earliest date she could retire under the law) and her normal retirement date for all three statutory definitions of normal retirement. For ASRS members who joined before July 1, 2011, "normal retirement date" means the earliest of the following: (1) a member's 65th birthday, (2) a member's 62nd birthday and completion of at least ten years of service, or (3) the first day that the sum of a member's age and years of service equals 80. A.R.S. § 38–711(27)(a). Lagerman's earliest normal retirement date was December 23, 2007, under the 80-points definition.

¶4　　　　Although Lagerman was not an active member in 2005, ASRS allowed her to complete a service purchase that she had submitted in 2003 because it had not timely processed her request. An active member of ASRS may purchase credited service for prior public employment by paying a certain amount into ASRS. A.R.S. § 38–743. The service purchase accelerated Lagerman's 80-points normal retirement date to July 23, 2005, which was reflected in her member statement for the time period of July 1, 2004 through June 30, 2005.

¶5　　　　In summer 2006, Lagerman was diagnosed with cancer and underwent chemotherapy. During and following chemotherapy, Lagerman's mental and physical abilities deteriorated; she had difficulty concentrating and holding conversations. During this time, ASRS continued to mail her annual member statements from the fiscal year beginning July 1, 2005, through the fiscal year beginning July 1, 2010. Each member statement that she received moved the stated normal retirement date to the end of the applicable period. The member statements also stated that "[r]etirees receiving a monthly benefit are permitted under certain circumstances to return to work and still receive their benefit. For details on the return to work options, visit the ASRS website."

¶6　　　　ASRS stopped mailing the member statements to its members, including Lagerman, June 30, 2011. ASRS gave notice to its members that they must access their retirement information on their ASRS online accounts. Lagerman had already created an online ASRS account in 2007. She had also contacted ASRS in 2008 for assistance in resetting her account password.

¶7　　　　On April 6, 2016, ASRS received Lagerman's completed ASRS retirement application and processed her retirement effective as of that date. Lagerman appealed to the ASRS Assistant Director and requested a retirement date of August 2006. In her appeal letter, she noted that she had attended a benefits exposition at the AGO at which the ASRS representative stated that employees could not work more than 20 hours per week after retirement. She also noted that in 2003 the AGO informed her that she could not work more than 20 hours per week after retiring. She further noted that when she left the AGO, she "did not retire because [she] wanted to continue [her] professional career with full time work." The ASRS Assistant Director denied her appeal.

¶8　　　　Lagerman appealed to the ASRS Director, who denied the appeal. She then appealed that decision, and an administrative law judge ("ALJ") held a hearing in January 2017. During the hearing, Lagerman's

counsel asked ASRS employee Jenna Orozco whether the lump sum amount ASRS would have to pay Lagerman if it granted her request for a retroactive retirement under A.R.S. § 38–715(D)(4) was a factor in denying the request. Orozco denied that ASRS considered the amount of money that it would have to pay Lagerman when it rejected her request. Another ASRS employee, Ryan Falls, testified that he had no knowledge about the facts in Lagerman's case and was called to testify only about the actuarial concepts of the retirement system. During closing argument, counsel for ASRS also explained that Falls's testimony was offered simply to show that actuarial reasons to limit retroactive retirements under A.R.S. § 38–715(D)(4) exist.

**¶9**      The ALJ recommended affirming the ASRS Director's determination, which the ASRS Appeals Committee accepted. Lagerman then appealed to the superior court, which affirmed the ASRS Appeals Committee's decision. Lagerman timely appealed to this Court.

## DISCUSSION

### 1. Statutory Interpretation of A.R.S. § 38–764(A)

**¶10**      Lagerman argues that the superior court erred in concluding that A.R.S. § 38–764(A) does not allow her to elect a retirement date that occurred before the date she submitted her retirement application. This Court reviews the superior court's decision de novo and determines "whether the administrative action was not supported by substantial evidence or was illegal, arbitrary and capricious, or involved an abuse of discretion." *Pendergast v. Ariz. State Ret. Sys.*, 234 Ariz. 535, 538 ¶ 10 (App. 2014) (quoting *Carlson v. Ariz. State Pers. Bd.*, 214 Ariz. 426, 430 ¶ 13 (App. 2007)). "Although we view the evidence in the light most favorable to upholding the agency's decision, we are not bound by the agency's or the superior court's legal conclusions or statutory interpretations." *Parsons v. Ariz. Dep't of Health Servs.*, 242 Ariz. 320, 322–23 ¶ 10 (App. 2017).

**¶11**      This Court's primary goal in interpreting a statute is to give effect to the legislature's intent. *Id.* at 323 ¶ 11. "In doing so, we look to the statute's plain language as the best indicator of that intent[]" and "must construe the statute in context with other related provisions and its place in the statutory scheme." *Id.* This Court also attempts to "give meaning to 'each word, phrase, clause and sentence . . . so that no part of the legislation will be void, inert, redundant, or trivial.'" *See Ariz. State Univ. Bd. of Regents v. Ariz. State Ret. Sys.*, 242 Ariz. 387, 389 ¶ 7 (App. 2017) (quoting *In re Estate of Zaritsky*, 198 Ariz. 599, 603 ¶ 11 (App. 2000)).

¶12          Arizona Revised Statutes section 38–764(A) states:

> Retirement is deemed to commence on a date elected by
> the member. That date shall not be earlier than the day
> following the date of termination of employment, the
> date ASRS receives the member's completed retirement
> application or the date specified by the member
> pursuant to subsection I of this section.

Lagerman contends that because the statute uses the word "or," it should
be read in the disjunctive, meaning that she could elect a retirement date
that satisfied only the first clause, i.e., a date that occurred after she had
terminated her employment. As such, she argues that she could wait until
many years after she terminated work to retroactively elect to have her
retirement begin just after she was eligible for full retirement. She is
incorrect.

¶13          The statute states that a member's retirement date "shall not
be earlier" than (1) the day following the date of termination, (2) the date
ASRS receives the member's completed retirement application, or (3) the
date specified by the member under A.R.S. § 38–764(I). As such, the
statute's plain language prohibits a member's retirement from beginning
before all of the aforementioned dates. *See* Antonin Scalia & Bryan A.
Garner, *Reading Law: The Interpretation of Legal Texts* 119 (2012) (explaining
that when the disjunctive "or" is used after a negative, the effect is each item
listed is negated and prohibited); *see also Schane v. Int'l Bhd. of Teamsters
Union Local No. 710 Pension Fund Pension Plan*, 760 F.3d 585, 589–90 (7th Cir.
2014) (concluding that "the rule of inference that *not (X or Y)* is equivalent
to *not X and not Y*").

¶14          We cannot disregard, however, that A.R.S. § 38–764(I) creates
an exception to the termination-of-employment requirement in the first
clause of subpart (A): "A member who attains a normal retirement date
may retire at any time without terminating employment if the member is
employed for less than the hours required for active membership pursuant
to section 38–711, paragraph 23, subdivision (b)." Subpart (I) thereby allows
a member who is eligible for normal retirement to retire without
terminating employment if the member works less than 20 weeks in the
fiscal year and less than 20 hours per week, which are the active
membership hours defined in A.R.S. § 38–711(23)(b). By allowing a member
to retire without terminating employment, A.R.S. § 38–764(I) is inconsistent
with the plain language of A.R.S. § 38–764(A), under which a member may
not retire and continue work. To address this inconsistency, we apply the

rules of statutory construction and consider the statute's history, context, and purpose. *See Stein v. Sonus USA, Inc.*, 214 Ariz. 200, 202 ¶ 8 (App. 2007).

¶15        The history of A.R.S. § 38–764 shows that the legislature did not intend by adding subpart (I) to eliminate the requirement in subpart (A) that a member's retirement cannot begin before the member submits a completed retirement application. The legislature added what is now subpart (I), allowing a retired member to continue to work on a limited basis, in 1999 with Senate Bill 1083. Before that amendment, A.R.S. § 38–764(A) provided that the commencement of a member's retirement "shall not be earlier than the day following the date of termination of employment or the date ASRS receives the member's completed retirement application." The legislature added the third clause to subpart (A) ("the date specified by the member") in 1999, at the same time it amended the statute to add what is now subpart (I). 1999 Ariz. Sess. Laws, ch. 327, § 15 (1st Reg. Sess.).

¶16        The plain language of the statute before the amendment provided that a member could not elect to begin receiving retirement benefits before the date of the member's termination of employment or the date that ASRS received the member's completed retirement application. The purpose of the amendment was merely to allow retired members to work on a limited basis:

> 2. Redefines the term "member" and "compensation" to assist employers who hire part-time employees who meet the work-time requirements for ASRS.
>
> . . .
>
> 12. Clarifies that a member who has attained a normal retirement date but continues to work less than the hours required for active ASRS membership may do so without losing that member's retirement pension.

Senate Fact Sheet, S.B. 1083, 44th Leg., 1st Reg. Sess. (Ariz. Feb. 1, 1999); *see* A.R.S. § 38–764(I). Nothing in the legislative history indicates that when the legislature amended subpart (A) to accommodate the new provision in what is now subpart (I), it intended to eliminate the requirement that a member must submit a completed retirement application before beginning retirement, or that it intended to allow an employee to retroactively elect a retirement date many years in the past.

¶17          Related statutes support this interpretation. Arizona Revised Statutes section 38–757(A) states, "*After application on a form prescribed by the director*, a member may retire on reaching the member's normal retirement date." (Emphasis added.) Also, A.R.S. § 38–766(A) states that a retired member who works at least 20 weeks in a fiscal year and at least 20 hours per week resumes active membership in ASRS. In such event, the statute states that the member's retirement benefits will be suspended until the member either (1) terminates employment *and completes an application for re-retirement* or (2) attains a normal retirement date, no longer meets the active membership criteria, *and completes an application for re-retirement*. A.R.S. § 38–766(A). Therefore, the ASRS statutory scheme requires that a member's retirement may not commence before the member submits a retirement application.

¶18          Lagerman contends that any ambiguity in A.R.S. § 38–764(A) must be construed in her favor. "[I]f the meaning of a . . . provision remains uncertain after consideration of the parties' intentions, as reflected by their language in view of surrounding circumstances, a secondary rule of construction requires the provision to be construed against the drafter." *Pendergast*, 234 Ariz. at 541 ¶ 19 (quoting *MT Builders, L.L.C. v. Fisher Roofing, Inc.*, 219 Ariz. 297, 302 ¶ 10 (App. 2008)). Here, the plain language in the statute is unambiguous because the language can be interpreted only one way grammatically. And an inconsistency created by the 1999 amendment has been resolved by looking at the legislative history and statutory scheme, which show that the legislature intended that a member cannot receive retirement benefits before the member submits a retirement application. Because the intent of the legislature is clear, we need not construe the statute against ASRS.

### 2. ASRS's Fiduciary Duty to Lagerman

¶19          Under A.R.S. § 38–715(D)(4), the ASRS Director may "[m]ake retirement under this article effective retroactively to on or after the day following the date employment is terminated if the member was unable to apply before the retroactive effective date through no fault of the member." Lagerman challenges the decision by ASRS rejecting her request for retroactive retirement under this statute. She claims that ASRS breached its fiduciary duty by (a) taking financial and actuarial consequences into account when denying her request for a retroactive retirement date under A.R.S. § 38–715(D)(4) and (b) failing to raise her retirement options during her previous conversations with ASRS representatives.

¶20          ASRS owes a fiduciary duty to its members, including Lagerman. *See Ariz. State Univ. ex rel. Ariz. Bd. of Regents v. Ariz. State Ret. Sys.*, 237 Ariz. 246, 252–53 ¶ 28 (App. 2015). Whether a party breached a duty is a question of fact. *Keg Rests. Ariz., Inc. v. Jones*, 240 Ariz. 64, 77 ¶ 45 (App. 2016). "We review the evidence in the light most favorable to upholding [an agency]'s decision and will not substitute our judgment for that of the agency regarding factual questions and agency expertise." *Wassef v. Ariz. State Bd. of Dental Exam'rs through Hugunin*, 242 Ariz. 90, 93 ¶ 11 (App. 2017). Here, nothing in the record shows that Lagerman was unable to apply before the retroactive effective date through no fault of her own. Therefore, ASRS did not breach its fiduciary duty by declining to grant her a retroactive retirement date.

¶21          Lagerman cites other instances in which ASRS granted retroactive retirement dates, and she contends that her cancer history warranted a retroactive date. But ASRS granted retroactive retirement dates in those cases because the members were not at fault, including instances of administrative errors and instances when the member clearly expressed an intent to retire. Although Lagerman experienced mental and physical difficulties after receiving chemotherapy, her cancer diagnosis could not serve as a basis for allowing a retroactive retirement date because she was not diagnosed with cancer until summer 2006, a year after she became eligible for retirement in July 2005. Furthermore, she did not clearly show her intent to retire until 2016. Following the language of A.R.S. § 38–715(D)(4), this evidence supports the ALJ and Director's decision that her cancer did not prevent her from applying for retirement when she became eligible in 2005. Although she claims that she did not retire in 2005 because an ASRS representative had previously advised her that she would not be able to return to work full-time for the State if she collected retirement benefits at any time, she provides no evidence for this other than her own testimony. *See Royal Globe Ins. Co. v. Indus. Comm'n*, 20 Ariz. App. 432, 434 (App. 1973) (this Court defers to the ALJ's credibility determinations).

¶22          Lagerman also argues that Falls and Orozco's testimony showed that ASRS considered the potential financial and actuarial consequences of granting her request for retroactive retirement in denying her request. Assuming without deciding that ASRS might breach a fiduciary duty by considering the financial consequences of a waiver, the record shows that ASRS provided Falls's testimony to simply demonstrate that the limiting of retroactive retirements under A.R.S. § 38–715(D)(4) has an actuarial purpose. Falls testified that he had no knowledge of the facts in Lagerman's case and was called to testify only about the actuarial

concepts for the retirement system. Moreover, Orozco testified that financial consequences were not a factor in determining whether to grant Lagerman's request for a retroactive retirement date. Therefore, this argument is not persuasive.

¶23 Next, Lagerman notes that she had various contacts with ASRS between 2003 and 2016, and she argues that ASRS breached its fiduciary duty by failing to inform her of her retirement options before 2016. Under A.R.S. § 38–755(A), ASRS "shall make information concerning a member's account accessible to the member in written or electronic form. This information shall include the member's current account balance, contact information, beneficiary election, estimated retirement date and estimated benefit amount." The record shows that ASRS complied with A.R.S. § 38–755(A) by mailing Lagerman retirement statements and by later posting the information online for Lagerman to review. The record also shows that each time Lagerman contacted ASRS, the contact's purpose was logged—and none of the contacts before 2016 concerned how or when she could receive her retirement benefits. Instead, the contacts focused on other subjects, such as resetting her password or addressing service purchase issues. The last contact logged was in March 2016, when Lagerman called to update her beneficiary designation and to schedule an appointment in April 2016 to start her retirement. Lagerman does not cite any authority for the proposition that ASRS representatives must explain a member's retirement options every time they hear from a member, and we know of no authority. As such, this argument fails.

¶24 Lagerman also excuses her delayed application by claiming that she was confused because of the multiple normal retirement dates and because ASRS began including return-to-work information on the member statements after she began her battle with cancer. If Lagerman was confused about the member statements and the normal retirement dates, she could have contacted ASRS for clarification, but she did not do so. Likewise, if she had questions about returning to work, she could have searched for the information on the ASRS website or contacted an ASRS representative, but again, she did not do so. As such, this argument is not persuasive.

### 3. Remaining Arguments

¶25 Lagerman argues that ASRS's refusal to allow her to elect a retirement date that was before the date she had submitted her retirement application caused her to forfeit about $220,000 in retirement benefits, thereby violating A.R.S. § 38–757(A). That subsection states that a member's

right to retirement benefits is nonforfeitable upon attainment of the member's normal retirement date. A.R.S. § 38–757(A). Although the statute affirms that a member's right to retirement benefits is vested after reaching the member's normal retirement date, the vesting does not extinguish the member's need to satisfy other statutory requirements before making a retirement effective, such as filing a retirement application. *See Hall v. Elected Officials' Ret. Plan*, 241 Ariz. 33, 44 ¶ 33 (2016). Thus, this argument fails.

**¶26** She also argues that ASRS's actions diminished or impaired her retirement benefits. The Arizona Constitution, Article 29, Section 1(C)–(D) provides, "Membership in a public retirement system is a contractual relationship that is subject to article II, section 25[,]" and "[p]ublic retirement system benefits shall not be diminished or impaired[.]" The ASRS contractual relationship is described in the ASRS statutes, which require a member to file a retirement application before the member can receive retirement benefits. A.R.S. §§ 38–757(A), –764(A), –766(A). After submitting her application in April 2016, which the contractual relationship requires, Lagerman has been receiving monthly payments from ASRS. And because Lagerman elected a joint and survivor annuity option naming her husband as the beneficiary, ASRS will pay any remaining monthly benefits to her husband after her passing. Thus, her retirement benefits have not been diminished or impaired.

**¶27** Lagerman requests attorneys' fees under Arizona Rule of Civil Appellate Procedure 21 and A.R.S. §§ 12–341.01 and –348. As the unsuccessful party on appeal, she is not entitled to attorneys' fees.

## CONCLUSION

**¶28** For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA