IN THE
# SUPREME COURT OF THE STATE OF ARIZONA

**SUSAN LAGERMAN**,
*Plaintiff/Appellant*,

*v.*

**ARIZONA STATE RETIREMENT SYSTEM**,
*Defendant/Appellee*.

No. CV-19-0101-PR
Filed May 14, 2020

Appeal from the Superior Court in Maricopa County
The Honorable Patricia A. Starr, Judge
No.  LC2017-000102-001
**AFFIRMED**

Opinion of the Court of Appeals, Division One
246 Ariz. 270 (App. 2019)
**AFFIRMED IN PART AND VACATED IN PART**

COUNSEL:

J. Alex Grimsley (argued), Dickinson Wright PLLC, Phoenix; and Thomas Griffin, Robaina & Kresin PLLC, Phoenix, Attorneys for Susan Lagerman

Mark Brnovich, Arizona Attorney General, Kathleen P. Sweeney, Senior Appellate Counsel, Phoenix; and Timothy J. Berg (argued), Ryan C. Curtis, Fennemore Craig, P.C., Phoenix, Attorneys for Arizona State Retirement System

JUSTICE MONTGOMERY authored the opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER and JUSTICES BOLICK, GOULD, LOPEZ, and PELANDER (RETIRED)[1] joined.

---

JUSTICE MONTGOMERY, opinion of the Court:

**¶1** This case involves two distinct yet interrelated issues concerning the administration of the Arizona State Retirement System ("ASRS").[2] First, we consider whether requiring submittal of a retirement application pursuant to A.R.S. § 38-757(A) as a condition for receiving retirement benefits violates article 29, section 1(D) of the Arizona Constitution, which prohibits the diminishment or impairment of public retirement system benefits. Second, we determine whether all the conditions for electing a retirement date set forth in A.R.S. § 38-764(A) must be satisfied or if meeting any one may suffice.

**¶2** We hold that the requirement to submit a retirement application for receipt of retirement benefits pursuant to § 38-757(A) does not violate article 29, section 1(D), and that all conditions listed in § 38-764(A) must be satisfied in order to elect a retirement date under the Plan.

**I.**

**¶3** Susan Lagerman began her Plan-qualified employment as a securities examiner with the Arizona Corporation Commission in 1978. She continued in the Plan as an attorney with the Arizona Attorney General's

---

[1] Justice James P. Beene has recused himself from this case. Pursuant to article 6, section 3 of the Arizona Constitution, the Honorable John Pelander, Justice of the Arizona Supreme Court (Retired), was designated to sit in this matter.

[2] Arizona statutes use "ASRS" when referring to both the retirement plan and the agency administering that plan. To avoid any confusion, we use "Agency" when referring to ASRS personnel and their actions and use "Plan" when referring to the retirement plan.

Office from 1981 to February 17, 2003. She became eligible for a normal retirement on July 23, 2005.[3]

¶4        On April 6, 2016, Lagerman submitted an application for retirement, listing July 23, 2005 as her date for commencing retirement. The Agency rejected the July 23 date as her retirement date and instead used the April 6 date. The financial consequence of the Agency's decision to Lagerman is significant. The benefit payments between the 2005 date and the date she submitted her application in 2016 is approximately $220,000.

¶5        Lagerman unsuccessfully appealed the Agency's decision to the Agency Assistant Director and then to the Director. She then appealed the decision to the Office of Administrative Hearings and argued that the plain language of § 38-764(A) permitted her to choose July 23, 2005 as her retirement commencement date. Throughout, the Agency maintained that § 38-764(A) requires a retiring member to choose a date for commencing retirement that is not earlier than the day following termination of employment and not earlier than the date of submission of a retirement application. The administrative law judge recommended affirming the determination that Lagerman's retirement date was April 6, 2016, and the Agency Appeals Committee accepted that recommendation.

¶6        Lagerman then sought judicial review in superior court pursuant to the Administrative Review Act. A.R.S. § 12-901, *et seq*. The court affirmed the Agency's decision.

¶7        Lagerman appealed, and the court of appeals affirmed the superior court. *Lagerman v. Ariz. State Ret. Sys.*, 246 Ariz. 270, 272 ¶ 2 (App. 2019). The court rejected her interpretation of § 38-764(A), concluding that the statute precludes electing a retirement date before the Agency receives a retirement application and that such a result does not diminish or impair

---

[3] "Normal retirement" for members who began work before July 1, 2011 can occur when a Plan member reaches age sixty-two with ten years of service, reaches age sixty-five, or, as in Lagerman's case, when a member's combined age and years of service equals eighty. *See* A.R.S. § 38-711(27)(a).

her benefits in violation of § 38-757(A) or article 29, section 1(D) of the Arizona Constitution. *See id.*

**¶8** We granted review because the terms and conditions for beginning retirement and the receipt of retirement benefits under the Plan are legal issues of first impression with statewide importance. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## II.

**¶9** The Plan is a defined benefit plan that provides retirement benefits to employees of the State of Arizona and employees of participating political subdivisions. *See* A.R.S. §§ 38-711(13), -711(23), and -712(B). Public employees in Arizona are required to participate if they are working at least twenty hours each week for at least twenty weeks in a fiscal year with a participating Plan employer. A.R.S. §§ 38-736(A), -711(23)(b).

**¶10** There are three categories of Plan members: active, inactive, and retired. Active members contribute to the Plan and work the required hours for membership. *See* A.R.S. § 38-711(1), -711(23)(b). Inactive members are those who previously made contributions to the Plan but are not currently contributing, are not eligible for active membership, and have not withdrawn their contributions or begun receiving retirement benefits. A.R.S. § 38-711(16). Retired members are currently receiving Plan retirement benefits. A.R.S. § 38-711(30).

**¶11** Plan members do not necessarily retire when they end employment. There are several possible post-employment scenarios. First, when members terminate employment, they can seek a return of their own contributions plus those of the employer, if applicable, with interest. A.R.S. § 38-740. Second, members can terminate employment and simply leave their contributions with the Plan where their contributions, along with a percentage of the employer's contributions based on years of service, plus any interest may be returned to the member at a later date or used as a survivor benefit payable to a designated beneficiary following the member's death. A.R.S. §§ 38-740, -762. Third, members may later return to employment with a Plan employer and resume making contributions.

4

A.R.S. § 38-766. Finally, members may choose to retire when they reach their normal retirement date. *See* A.R.S. § 38-711(27).

### III.

**¶12** Lagerman contends that her right to a retirement benefit was unconditional and nonforfeitable as of her July 23, 2005 retirement date pursuant to § 38-757(A). Thus, she claims that her right to collect retirement benefits was not contingent on submitting a retirement application, which she insists is just a procedural step. Therefore, any delay in initiating payment of her monthly benefit—regardless of when she submitted a retirement application—requires either a lump sum payment with interest or an increase in future payments to account for benefits not paid in the interim. Otherwise, she asserts, the failure to account for amounts not paid diminishes or impairs her benefits contrary to article 29, section 1(D) of the Arizona Constitution. Lagerman additionally argues that § 38-764(A) permits her to elect a retirement date that satisfies any of the conditions listed therein.

**¶13** We review de novo an administrative decision based on an interpretation of law. *See* A.R.S. § 12–910(E); *see also Forest Guardians v. Wells*, 201 Ariz. 255, 259 ¶ 9 (2001). "If a statute is subject to only one reasonable interpretation, we apply it without further analysis." *Glazer v. State*, 237 Ariz. 160, 163 ¶ 12 (2015). Statutes that address the same subject or general purpose "should be read together and harmonized when possible." *David C. v. Alexis S.*, 240 Ariz. 53, 55 ¶ 9 (2016). "[I]f possible this court construes statutes to avoid rendering them unconstitutional." *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 272 (1994).

### A.

**¶14** Arizona Revised Statutes § 38-757 provides:

> A. After application on a form prescribed by the director, a member may retire on reaching the member's normal retirement date. Except as provided in § 13-713, a member's right to the member's normal retirement benefit as described in subsection B of this section is nonforfeitable by an employer

or ASRS on attainment of the member's normal retirement date.

B. Except as provided in § 38-768, a member who meets the requirements for retirement benefits at normal retirement shall receive a monthly life annuity . . . .

. . . .

¶15        Reading subsections (A) and (B) together, as the reference to subsection (B) in subsection (A) necessarily requires, it is clear that a member shall receive a monthly annuity payment *after* applying on the prescribed form *and* reaching the normal retirement date.  The fact that a Plan member's right to a normal retirement benefit is nonforfeitable as of the normal retirement date, except as provided in § 13-713,[4] does not eliminate the statutory requirements a member must satisfy in order to receive the benefit.  Before submitting an application and attaining a normal retirement date, a member is not entitled to receive retirement benefits.  The statute, by its terms, renders submitting a retirement application a substantive condition precedent for receiving retirement benefits; the application is not just a procedural step.

¶16        In *Hall v. Elected Officials' Retirement Plan*, we surveyed previous cases involving pension rights to conclude that "a public employee's interest in a retirement benefit or pension becomes a right or entitlement at the outset of employment, but the right to begin collecting pension benefits is contingent upon completing the requirements for retirement eligibility."  241 Ariz. 33, 44 ¶ 33 (2016) (citing *Fields v. Elected Officials' Ret. Plan*, 234 Ariz. 214, 221 ¶ 31 (2014) (providing that although the right to receive a pension "vest[s] upon acceptance of employment," the pension is "subject to conditions precedent, such as completing the term of employment") and *Krucker v. Goddard*, 99 Ariz. 227, 230 (1965) (providing that a plan member's right to withdraw contributions vested because he "had fulfilled every condition precedent to having his contributions returned")).

---

[4] The legislature added § 13-713 in 2011, providing for forfeiture of rights and benefits under the Plan in the event a Plan member is convicted of certain felonies committed in the course of public employment.

¶17    Consequently, although Lagerman's right to retirement benefits was nonforfeitable as of July 23, 2005, the Plan was not obligated to pay her until she satisfied all the requirements to receive benefits by submitting her retirement application on April 6, 2016.  Because the Plan has paid her a monthly benefit after she complied with the provisions of § 38-757, no diminishment or impairment of her benefits has occurred in violation of article 29, section 1(D) of the Arizona Constitution.

### 1.

¶18    Lagerman's assertion that the nonforfeitability language in § 38-757(A) requires the Plan to pay her benefits as of her normal retirement date, regardless of when she submits a retirement application, is inconsistent with other provisions governing the Plan.  Only two sections make allowance for a retroactive payment of benefits.  When a change or error in Agency records results in a member receiving less than the correct amount, A.R.S. § 38-765 requires the Agency to "correct the error and as far as practicable . . . adjust the payments in a manner so that the actuarial equivalent of the benefit to which the member or beneficiary was correctly entitled is paid."  And A.R.S. § 38-715(D)(4) authorizes the Agency director, with the approval of the Agency board, to "[m]ake retirement under this article effective retroactively to on or after the day following the date employment is terminated if the member was unable to apply before the retroactive effective date through no fault of the member."  Neither circumstance is before us.[5]  Finally, the methodology used to determine the annual value of the Plan as required by A.R.S. § 38-714 is not structured to account for liabilities based on mere attainment of a normal retirement date. *See* ASRS 2019 Comprehensive Annual Financial Report, 98 https://www.azasrs.gov/sites/default/files/2019_ASRS_CAFR_Web.pdf. Instead, the methodology takes into account retirements. *See id.*

---

[5] Although Lagerman raised the issue of a retroactive retirement pursuant to § 38-715(D)(4) before the court of appeals, she did not raise it in her petition to this Court.

7

**2.**

**¶19**         Requiring the submission of a retirement application as a condition for receiving benefits accords with other statutory provisions governing the administration of the Plan.  For example, at retirement, a member must provide the Agency with information regarding the type of benefit payment the member wants to receive, the identity and age of the member's designated beneficiary, the member's choice of health care options, and any required spouse information.  *See* A.R.S. §§ 38-758, -760, and -776.

**¶20**         Retiring members can choose to receive their retirement benefit as a joint and survivor annuity, a period-certain annuity, a straight life annuity, or take a lump sum at the time of retirement and thereafter receive a life annuity.  A.R.S. § 38-760(B).  In the case of a joint and survivor or period-certain annuity, members must have designated a beneficiary.  *See id.*  In either instance, the monthly benefit payment is modified based on the ages of the retiring member and the designated beneficiary at the time of retirement.  Ariz. Admin. Code R8-2-126(F).  For Lagerman, a straight life annuity monthly benefit would have been $1,930.09, while a joint and survivor annuity, which she chose, is $1,708.32.  Members also have options regarding whether and how to participate in health insurance options for themselves or their family as provided by the Plan.  A.R.S. §§ 38-782, -783.  Lastly, if a member is married at the time of retirement, the spouse must be named as a contingent annuitant or the spouse must waive the designation.  A.R.S. § 38-760(C), -776.  Failure to name a spouse or submit a waiver from a spouse will result in the Plan cancelling the member's retirement and the member will have to reapply.  A.R.S. § 38-760(C).

**¶21**         The retirement application thus also provides necessary information for the Plan to administer benefits to retiring members.  Without the information provided with the application, the Plan would not be able to calculate the proper payment for a member's monthly retirement benefit, provide the elected health care benefits, identify beneficiaries for calculating any payment modifications, or know who to make benefit payments to upon the retired member's death.  Furthermore, until Lagerman chose the type of annuity she wanted to receive and designated

her beneficiary at the time of her actual retirement, the Agency could not have determined its liability for Lagerman's retirement benefit.

**B.**

**¶22** Lagerman points out that the Arizona Legislature amended § 38-757(A) in 2013, adding the second sentence referencing § 13-713 and the nonforfeitability language. She characterizes this amendment as evidencing the legislature's intent to conform the Plan to federal law regarding nonforfeitability because it bore the heading "Federal Conforming Changes" in the accompanying Senate Fact Sheet. *See* Ariz. State Senate Final Amended Fact Sheet for S.B. 1170, 51st Leg., 1st Reg. Sess. (Jul. 11, 2013). Lagerman notes that this nonforfeitability language tracks similar language in 26 U.S.C. § 411(a)[6] of the Internal Revenue Code, 29 U.S.C. § 1053(a)[7] of the Employee Retirement Income Security Act ("ERISA"), and 26 C.F.R. § 1-411(a).[8] Lagerman thus concludes that federal pension law and federal cases addressing nonforfeitability in pension benefits are equally applicable to § 38-757(A).

**¶23** However, as "a plan established and maintained for its employees . . . by the government of [Arizona]," the Plan is a government plan. *See* 26 U.S.C. § 414(d); *see also* 29 U.S.C. § 1002(32); and A.R.S. § 38-712. Therefore, the Plan is exempt from the provisions of ERISA. *See* 29 U.S.C. § 1003(b)(1) ("The provisions of [ERISA] shall not apply to any employee benefit plan if such plan is a governmental plan . . . ."). The Plan is also generally exempt from 26 U.S.C. § 411, except for the need to meet minimum vesting requirements. *See* 26 U.S.C. § 411(e).

---

[6] "A trust shall not constitute a qualified trust under section 401(a) unless the plan . . . provides that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age . . . ."

[7] "Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age . . . ."

[8] "A plan is not a qualified plan . . . unless—The plan provides that an employee's right to his normal retirement benefit . . . is nonforfeitable . . . upon and after the attainment of normal retirement age."

**1.**

**¶24**　　　　Even if Lagerman were correct that the legislature intended to conform the Plan to federal pension law concerning the nonforfeitability of pension benefits, her conclusion that § 38-757(A) requires the Plan to pay her retirement benefits beginning on July 23, 2005 is incorrect. The cases she cites interpreting ERISA, though not controlling, are consistent with the Agency's administration of retirement under the Plan.

**¶25**　　　　The facts of *Contilli v. Local 705 International Brotherhood of Teamsters Pension Fund* help illustrate the difference between attaining a normal retirement age and actually retiring for purposes of receiving retirement benefits. 559 F.3d 720 (7th Cir. 2009). There, the plaintiff reached normal retirement age when he turned 65 on August 30, 1995, but he did not actually retire until October 1997. *Id.* at 721. The plaintiff then applied for retirement benefits in January 1998 and began receiving benefits in February. *Id.* At issue was the plan's failure to pay benefits as of the date he retired and to make an actuarial adjustment to account for the time between his retirement in October and when he began receiving his pension in February. *Id.* at 722. The court reviewed the distinction between being eligible for retirement and actually retiring when considering the need for an actuarial adjustment for any delay in paying benefits and explained:

> There is an exception to the actuarial-adjustment requirement for a participant who puts off retirement while continuing to work. *See* 29 U.S.C. § 1053(a)(3)(B). So the Fund was entitled to start Contilli's pension in November 1997, when he retired, rather than in September 1995, the month after his 65th birthday; it did not need to send him catch-up checks for those two years or make any adjustment other than what the plan itself required . . . . But once Contilli retired his entitlement was fixed, and the Fund's failure to pay any month's benefit worked a forfeiture of that amount.

*Id.*; *see also Cotter v. Eastern Conference of Teamsters Retirement Plan*, 898 F.2d 424, 426 (4th Cir. 1990) (noting difference between eligibility for benefits and entitlement to receive benefits).

¶26         Like the Fund in *Contilli*, the Agency is not obligated to pay Lagerman "catch-up checks" or to make an actuarial adjustment to account for the time between her normal retirement date and the date on which she submitted her retirement application and actually retired. Instead, the Agency was required to pay—and has paid—Lagerman the amount of her retirement benefit she had a nonforfeitable right to and that was "fixed" as of her retirement date, April 6, 2016.


**2.**

¶27         In the other case cited by Lagerman, *Canseco v. Construction Laborers Pension Trust for Southern California*, 93 F.3d 600 (9th Cir. 1996), the court considered whether a retirement application was in fact a condition for eligibility to receive retirement benefits. The *Canseco* court highlighted the fact that the structure of the plan addressed retirement eligibility and applying for benefits separately in different sections, stating:

> Finally, the structure of the [] plan reinforces our conclusion that the plan does not require an application as a condition of eligibility. Article 2 and Article 5 cover separate provisions of the plan: Article 2 governs "Eligibility for Retirement Benefits," while Article 5 governs "Payment of Benefits." The separation of these provisions into different articles . . . indicates that *eligibility* for retirement benefits is wholly independent from the *payment* of those benefits.

*Id.* at 607.


¶28         Unlike the plan in *Canseco*, the requirements for normal retirement for Lagerman are set forth in one place in § 38-757, which explicitly states that "*[a]fter application* . . . a member may retire on reaching the member's normal retirement date." § 38-757(A) (emphasis added). The requirement to submit a retirement application and being eligible for retirement are inextricable conditions precedent to eligibility for receipt of Plan retirement benefits.

**C.**

¶29      With respect to commencing retirement, § 38-764 provides:

> A. Retirement is deemed to commence on a date elected by the member. That date shall not be earlier than the day following the date of termination of employment, the date ASRS receives the member's completed retirement application or the date specified by the member pursuant to subsection I of this section.
>
> . . . .
>
> I. A member who attains a normal retirement date may retire at any time without terminating employment if the member is employed for less than the hours required for active membership pursuant to § 38-711, paragraph 23, subdivision (b).

¶30      Lagerman contends that "or" in subsection (A) is used in the disjunctive, permitting her to elect a retirement date for any of the three events listed. Accordingly, she could elect a date that is not earlier than the day following the date she terminated employment, or the date the Agency received her completed retirement application, or the date she specified pursuant to subsection (I). Therefore, she could submit a retirement application in 2016 with an effective retirement date in 2005. We disagree.

¶31      The consequence of a negative phrase—"shall not be earlier than"—preceding "or" in subsection (A) is that the conditions listed are each prohibited. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 119 (2012) (addressing the singular negation-effect that occurs when a disjunctive "or" is preceded by "not" to prohibit any and all items in a list); *see also Schane v. International Brotherhood of Teamsters Union Local No. 710 Pension Fund Pension Plan*, 760 F.3d 585, 589 (7th Cir. 2014) (illustrating "that not (X or Y) is equivalent to not X and not Y" (emphasis omitted)). Thus, § 38-764(A) requires a member to elect a retirement date that is *not earlier than* the day following her termination of employment, *not earlier than* the date of receipt of her retirement application, *and not earlier than* the date on which she specifies pursuant to § 38-764(I).

**¶32** The statute's history supports this interpretation as well. Before the 1999 amendments that added subsection (I) to § 38-764 and the reference to (I) in subsection (A), § 38-764(A) read "[r]etirement is deemed to commence on a date elected by the member. That date shall not be earlier than the day following the date of termination of employment or the date ASRS receives the member's completed retirement application." Applying the singular-negation effect to the pre-1999 version of § 38-764(A), with the same occurrence of "or" preceded by a negative, yields the same result. A member was required to elect a retirement date that was *not earlier than* the date the member terminated employment *and not earlier than* the date the member submitted a completed retirement application.

**¶33** There is no evidence the legislature sought to alter the conditions for electing a retirement date when it amended the statute in 1999. Both the Senate Fact Sheet and House Bill Summary for the amendments characterized the changes as "[c]larif[ying] that a member who has attained a normal retirement date but continues to work less than the hours required for active ASRS membership may do so without interrupting that member's retirement pension." Ariz. State Senate Fact Sheet for S.B. 1083, 44th Leg., 1st Reg. Sess. (May 27, 1999); Ariz. State House Bill Summary for S.B. 1083, 44th Leg., 1st Reg. Sess. (Mar. 25, 1999).

**¶34** Lagerman further asserts that if "or" is read in this manner, it creates a conflict between subsections (A) and (I). Specifically, she points out that a member who elects to retire but continues in employment under (I) necessarily retires "earlier than the day following the date of termination of employment," which is not permitted by the first clause in the second sentence of (A). However, the conflict she identifies is resolved by reading (A) and (I) together, as the reference to (I) in subsection (A) requires, with other provisions governing active membership in the Plan.

**¶35** "When possible, we seek to harmonize statutory provisions and avoid interpretations that result in contradictory provisions." *Premier Physicians Grp., PLLC v. Navarro*, 240 Ariz. 193, 195 ¶ 9 (2016). The first clause of the second sentence in (A) contemplates an active member's termination of employment with a Plan employer. The consequence of

ceasing employment is that the member is no longer working and therefore is not an active member, as referenced in subsection (I). The third clause of the second sentence in (A) applies to an active member who elects to retire but also elects to continue working under the option offered by subsection (I). Subsection (I) specifically provides that members selecting this option must end active membership by working "less than the hours required for active membership pursuant to § 38-711, paragraph 23, subdivision (b)." Read together then, both (A) and (I) require a member to cease working the hours that would qualify a member for active membership in the Plan as a condition for electing a retirement date. That the member must choose how to comply with this condition—terminating employment or working fewer hours than required for active membership—does not constitute a conflict between subsections (A) and (I).

## IV.

**¶36** Because the Plan processed Lagerman's retirement date as provided for in statute and calculated her chosen monthly life annuity benefit as required, the Plan complied with § 38-757(A), and no forfeiture, diminishment or impairment of Lagerman's normal retirement benefits occurred in violation of article 29, section 1(D) of the Arizona Constitution.

**¶37** Section 38-764(A) requires a member to elect a date for retirement that follows termination of active membership in the Plan and submission of a completed retirement application. Therefore, Lagerman's effective date of retirement is April 6, 2016.

**¶38** Because she is not the prevailing party, we deny Lagerman's request for attorney fees.

## V.

**¶39** We affirm the trial court's judgment. We vacate all but ¶¶ 19-24 of the court of appeals' opinion but affirm that court's conclusion and result.